kaw

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RURAL WATER DISTRICT NO. 4, DOUGLAS COUNTY, KANSAS,** ) ) ) **Plaintiff,** ) ) **vs.** ) ) **CITY OF EUDORA, KANSAS,** ) ) **Defendant.** ) ) | Case No. 07-2463-JAR |

## MEMORANDUM AND ORDER

The Court now considers defendant City of Eudora, Kansas's Motion to Certify Questions to the Kansas Supreme Court (Doc. 140). The parties have submitted their briefs and the Court is prepared to rule. For the reasons stated below, defendant's motion is denied.

**Background**

Defendant City of Eudora, Kansas ("Eudora") annexed four tracts of land in Douglas County, Kansas. This land was within the territory of plaintiff Rural Water District No. 4, Douglas County Kansas ("Rural Water"), a quasi-municipal corporation organized for the purpose of providing water service in rural Douglas County. Rural Water had previously obtained a loan to construct water facilities. The loan was guaranteed by the Farmer's Home Administration.[1] At the same time, Eudora owned and operated its own water treatment and

---

[1] Congress authorized the Secretary of Agriculture to make and insure loans to non-profit water associations as a part of the Consolidated Farm and Rural Development Act. As a result, the Secretary formed the Farmer's Home Administration, or as it is currently known, the Rural Utilities Service, a branch of the United States Department of Agriculture, to administer loans to these water associations. *Rural Water Dist. No. 1, Ellsworth County, Kan. v. City of Wilson, Kan.*, 243 F.3d 1263, 1269 (10th Cir. 2001).

distribution facilities.

When Eudora annexed the land, Eudora and Rural Water both claimed the right to provide water service in the territory, to the exclusion of the other. Eudora claimed that Rural Water was in violation of K.S.A. § 12-527,[2] which provides that when a municipality annexes territory that is served by a water district, the municipality is required to negotiate with the water district to acquire title to all the water district's property and begin to service those residents in that territory. If the municipality and the water district are unable to reach an agreement as to the value of the property, then each party selects an appraiser, and the two appraisers together select

---

[2](a) Whenever a city annexes land located within a rural water district organized pursuant to the provisions of K.S.A. 82a-612 et seq., and amendments thereto, the city shall negotiate with the district to acquire title to all facilities owned by the water district and used for the transportation or utilization of water distribution to the water district benefit units within the area annexed by the city. Title shall vest in or become the property of the city upon payment by the city to the water district of the reasonable value of such property, as agreed upon by the governing body of the city and the board of directors of the district. If the district is unable to reach agreement with the city on the reasonable value for such facilities, then the reasonable value shall be determined in the following manner:
(1) The district and the city shall each select one qualified appraiser and the two appraisers so selected shall then select a third appraiser for the purpose of conducting appraisals so as to determine reasonable value of the property, facilities and improvements of the district annexed by the city.
(2) The agreement or decision of at least two of the three appraisers shall be the fair market value presented to the city for payment and the district for acceptance.
(3) If either the district or the city is dissatisfied with the decision of the appraisers, then the district or the city may institute an action in the district court to challenge the reasonableness of the value determined by the appraisers.
(b) The compensation required by this section shall be paid to the district whether or not the city actually utilizes the facilities of the district for the delivery of water to property within the city and shall be paid at a time not later than 120 days following the date upon which the fair market value of the facilities are certified to the city and to the district, or at such later date as may be mutually agreed upon by the city and the water district or as may be determined by the district court. The city, as part of its service extension plan required under the provisions of K.S.A. 12-520b and 12- 521c, and amendments thereto, shall notify each affected rural water district of its future plans for the delivery of water in areas proposed for annexation currently being served by the district.
(c) The governing body of the city and board of directors of the district may provide, on such terms as may be agreed upon, that water transmission facilities owned by the district and located within the city may be retained by the district for the purpose of transporting water to benefit units outside the city.
(d) Except for nonpayment of bills, the district shall not diminish service to benefit units who were supplied water by the district at the time of annexation during the period of negotiations conducted pursuant to this section.
(e) Nothing in this section shall be construed as limiting in any manner the authority of a city to select water service suppliers to areas within the city limits, or to limit in any manner the authority of a city to adopt and enforce regulations for the operation of a water service supplier, including but not limited to standards of water quality, classification of water customers, capacity of water system, water system connections to sanitary sewer systems, rates and billing practices and other regulations for protection of the public health, safety and welfare.

an independent appraiser to assign the value of the property.[3] If the independent appraiser is unable to value the property, then the value agreed to by the majority of the three appraisers is assigned, or alternatively, the municipality or the water district may institute an action in the district court to resolve the disagreement.[4]

After annexing the property, Eudora moved to acquire Rural Water's property, pursuant to K.S.A. § 12-527. But Rural Water refused any offer and rebuffed Eudora's attempts to retain an appraiser. Rural Water acknowledges that generally, upon annexation, a municipality is entitled to acquire the land and assets of a rural water district. But when a water district is obligated on a federally guaranteed loan as Rural Water is, 7 U.S.C. § 1926(b)[5] applies, preempts the state statute, and precludes the municipality from curtailing or limiting a water district's service in its territory or to its customers. Thus, Rural Water brought this action under 42 U.S.C. § 1983, claiming that Eudora violated § 1926(b), seeking damages, a declaratory judgment, and injunctive relief.

Eudora moved to dismiss Count One, arguing that Rural Water had failed to state a claim under § 1983 because it had not alleged that an actual curtailment of service had occurred.[6] This

---

[3]K.S.A. § 12-527(a)(1).

[4]K.S.A. § 12-527.

[5]Section 1926(b) states:
> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

[6](Doc. 22.)

Court granted dismissal of the § 1983 claim,[7] concluding that merely stating that Eudora has sought to compel Rural Water to sell its property and to allow Eudora to provide water service in the territory, does not state a violation of the protection from "curtailment or limitation" of rights conferred in § 1926(b), and thus fails to state a claim under § 1983.  Rural Water thereafter amended its Complaint,[8] to state that Eudora's actions "have curtailed and limited the service provided or made available by [Plaintiff] and constitute a continuing threat to further curtail or limit the service provided or made available by [Plaintiff.]"  The Amended Complaint further states that Eudora's actions include: (1) annexing areas within Rural Water's s territory; (2) forcing a sale of Rural Water's facilities and customers within the annexed areas or requiring Rural Water to obtain an agreement or permit from Eudora in order to serve such areas; and (3) removing Rural Water's legal right to serve the annexed areas.  The Amended Complaint alleges that Rural Water has suffered actual damages and is in immediate jeopardy of suffering additional damages as a result of Defendant's alleged wrongful acts.  The Amended Complaint further states that Eudora has "communicated to potential customers . . . concerning providing water service, including but not limited to threatening Mr. Garber that if he obtains water service from . . . (Rural Water), his property might be de-annexed from the City and thus lose other City services and other benefits received by being within the City limits."

Now Eudora seeks to certify certain questions to the Kansas Supreme Court, concerning whether the provisions of K.S.A. § 12-527 are mandatory or directory with respect to a city's

---

[7](Doc. 71.)

[8]On March 24, 2008, Rural Water filed a motion to amend its Complaint (Doc. 77), which was granted by Magistrate Judge Waxse on April 24, 2008 (Doc. 94).  The City moved to reconsider the Magistrate's order, but that motion was denied (Doc. 142).  The Amended Complaint (Doc. 95) was filed on April 24, 2008.

involuntary taking of a rural water district's assets upon annexation, and concerning whether a rural water district possesses statutory authority to enter into an "unnecessary" federally guaranteed loan to obtain the protections of 7 U.S.C. § 1926(b) from competition for water customers. Eudora argues that resolution of these issues by the Kansas Supreme Court would be dispositive of the issues pending before this Court.

**Discussion**

Under K.S.A. § 60-3201, the Uniform Certification of Question of Law Act, a United States District Court may certify a question involving Kansas law to the Kansas Supreme Court where there appears to be no precedent from the Kansas Supreme Court or the Kansas Court of Appeals on the issue, and the issue is determinative of the case pending before the certifying court.[9] Whether to certify a question is within the discretion of the court[10] and is "not to be 'routinely invoked whenever a federal court is presented with an unsettled question of state law.'"[11] In fact, " [a]bsent 'some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred,' federal courts bear a duty to decide questions of state law when necessary to render a judgment.'"[12] This assessment, however, also requires the court to "give meaning and respect to the federal character of our judicial system, recognizing that the

---

[9] K.S.A. § 60-3201; *Kansas Judicial Watch v. Stout*, 455 F. Supp. 2d 1258, 1262 (D. Kan. 2006), *vacated*, *Kansas Judicial Watch Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008).

[10] *Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716-17 (10th Cir. 2005); *Kansas Judicial Watch*, 455 F. Supp. 2d at 1262.

[11] *Kansas Judicial Watch Review*, 519 F.3d at 1119; *Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988)).

[12] *Kansas Judicial Watch Review*, 519 F.3d at 1119 (quoting *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)).

judicial policy of a state should be decided when possible by state, not federal, courts."[13] Generally, the court should not certify a question to a state supreme court where the party seeking certification has received an adverse ruling on the issue.[14]

Eudora's proposed questions for certification are: (1) "Does K.S.A. § 12-527 require a city, which annexes into the political boundaries of a rural water district, to proceed with an involuntary taking of rural water district assets in the annexed area?"; and (2) "Does Kansas rural water district possess the statutory authority under K.S.A § 82a-619 to enter into an agreement for an unnecessary federal loan guarantee solely to obtain protection from anticipated competition for potential water customers under 7 U.S.C. § 1926(b)?"

**Directory or Mandatory Nature of K.S.A. § 12-527**

Rural Water argues that annexation alone is enough to show that the Eudora acted under color of state law and that the annexation curtails and limits a water district's right to sell water within its territory. Section 1926(b) provides that a water district's service "shall not be curtailed or limited by the inclusion of the area served . . . within the boundaries of any municipal corporation."[15] A water district that believes that a municipality has curtailed or limited its right may bring an action under 42 U.S.C. § 1983.[16] Under § 1983, plaintiff must show that defendant infringed a federal right under color of state law.

In this action, Rural Water claims that Eudora has infringed its right under § 1926(b) by

---

[13]*Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

[14]*Zurich Am. Ins., Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 926 (10th Cir. 2008) (citing *In re Midpoint Dev., LLC*, 466 F.3d 1201, 1207 (10th Cir. 2006)).

[15]7 U.S.C. § 1926(b).

[16]*See Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 701 (10th Cir. 2004).

annexing portions of Rural Water's district and because of this annexation, Eudora is required to purchase Rural Water's assets under K.S.A. § 12-527. Eudora claims that determining whether K.S.A. § 12-527 is mandatory or directory is dispositive of the case because, if K.S.A. § 12-527 is merely directory, then Eudora has not acted under color of state law.

This issue was raised in Eudora's motion to dismiss, specifically, whether annexation alone infringes on a water district's rights under 7 U.S.C. § 1926(b).[17] Indeed, Rural Water argues that Eudora's request for certification comes too late because Eudora seeks certification after establishment of the law of the case, that K.S.A. § 12-527 requires Eudora to purchase Rural Water's assets.

In its Order granting Eudora's motion to dismiss, this Court stated that simply alleging that Eudora has annexed certain territory of Rural Water is enough to state a claim under § 1926(b).[18] Eudora argues that annexation alone is not enough to "curtail or limit" as those terms are used in the statute. Citing *Rural Water District No. 1, Ellsworth County, Kansas v. City of Wilson, Kansas*,[19] Eudora argues that annexation cannot infringe Rural Water's right under § 1926(b). But the Court agrees with Rural Water that the *Ellsworth* court's statement that "[t]he annexation did not affect the parties' respective rights under § 1926"[20] was mere dicta, and not the product of any analysis of that issue.

In this case, the Court agrees with Rural Water that this Court's prior discussion in the

---

[17](Doc. 22.)

[18](Doc. 71, at 5.)

[19]211 F. Supp. 2d 1324 (D. Kan. 2002).

[20]*Id.* at 1326.

order granting the motion to dismiss was merely dicta. The fact remains, however, that Eudora annexed certain property belonging to Rural Water and then sought to obtain its assets via K.S.A. § 12-527. The Court need not determine whether K.S.A. § 12-527 is directory or mandatory, for the allegations in the Complaint reveal that Eudora not only annexed Rural Water's territory, but sought to use K.S.A. § 12-527 as a "mandatory" statute. The Court agrees with Rural Water that regardless of whether § 12-527 is directory or mandatory, Eudora is estopped because it acted from the beginning to invoke and pursue its right under the statute as if it was mandatory.

Moreover, as alleged by Rural Water, Eudora sought to obtain its customers through the use of K.S.A. § 12-527. Even if the statute is not mandatory, this Court believes the fact that a party seeks to make it so "curtails or limits" the rights of a water district under 7 U.S.C. § 1926(b). Therefore, whether K.S.A. § 12-527 is mandatory or directory is irrelevant to the issue of what constitutes curtailment under 7 U.S.C. § 1926(b). Because this issue is not determinative of the case, there is no basis to certify this question to the Kansas Supreme Court.

**Applicability of 7 U.S.C. § 1926(b)**

Eudora contends that resolution of the second proposed question is also dispositive, for if Rural Water lacked statutory authority to obtain the federally guaranteed loan, then Rural Water can neither invoke the protections of 7 U.S.C. § 1926(b), nor claim that its rights were infringed under that statute. Eudora argues that because a subdivision of a state possesses only those powers given to it by the state, if Rural Water acted without authority of the State of Kansas in entering into the loan agreement with the federal government, it does not have the continuing indebtedness required for protection under § 1926(b).

The State of Kansas confers authority on water districts pursuant to K.S.A. § 82a-619, which provides in pertinent part,

> [e]very district incorporated under this act shall have . . . the power to . . . (c) contract; . . . (g) cooperate with and enter into agreements with the secretary of the United States department of agriculture . . . and to accept financial or other aid which the secretary of the United States department is empowered to give . . . (h) acquire loans for the financing of up to 95% of the cost of construction or purchase of any project or projects necessary to carry out the purposes for which such district was organized . . . .

Eudora argues that, although the statute seems to grant rural water districts authority to form agreements, it does not grant authority to form *unnecessary* agreements. Of course, nothing in the Kansas statutory language limits a water district's authority to apply for only those loans that are deemed necessary. Such a limitation on a water district's authority would effectively impair the contractual obligations of the parties that entered into a loan agreement that was later questioned as unnecessary. To receive protection under § 1926(b), a party must show that it has a continuing indebtedness to the federal government and that it provided or made water available to the disputed area.[21] If K.S.A. § 82a-619 granted Kansas courts authority to act as "Monday morning quarterbacks" and determine that a water district had entered into an unnecessary loan with the federal government, Kansas courts would effectively have the power to eliminate the 7 U.S.C. § 1926(b) protection. Eudora's view would grant the state the authority to disregard a water district's right under § 1926(b), making it susceptible to state law and interfering with the federal government's right to repayment of its loan.

Imposing such a requirement of "necessity" would contravene the federal statute, for

---

[21]*Pittsburg County Rural Water Dist. No. 7*, 358 F.3d at 713.

there is no such limitation in 7 U.S.C. § 1926.  In fact, the federal statute sets forth a comprehensive scheme for the federal government's approval and administration of grants to, and loan guarantees for, water districts and other special entities.  The statute certainly establishes criteria for the awarding of grants or loan guarantees.  For example, the statute authorizes the Secretary of Agriculture "to make or insure loans . . . to provide for . . . the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities . . . ."[22]  And, the statute sets forth specific "Application Requirements" requiring a loan applicant to first file and publish notice of intent to apply for the loan.[23]  But there is no express requirement that the loan applicant show financial need or necessity for the loan.

In contrast, the statute seemingly requires much more oversight over the projects and expenditures of entities that obtain grants, limiting grant amounts based on the development costs for service to areas that can be feasibly served currently and in the future based on reasonably foreseeable growth needs of the area.[24]  The statute also requires that financial institutions seeking loan guarantees demonstrate they have the capability and resources to appropriately service the loan.[25]

Despite expressing specific application requirements, monetary limits and oversight over grant applications and recipients, and despite requiring loan guarantors to show financial

---

[22]7 U.S.C. § 1926(a)(1).

[23]7 U.S.C. § 1926(a)(5).

[24]*See, e.g.* 7 U.S.C. § 1926(a)(2), which limits grants for water, waste disposal and wastewater facilities to 75% of the "development cost of the project to serve the area which the association determines can be feasibly served by the facility and to adequately serve the reasonably foreseeable growth needs of the area."

[25]*See* 7 U.S.C. § 1926(a)(24).

capacity, the statute does not require loan recipients to show their financial need or the economic necessity of obtaining the loan.  The purpose of § 1926(b) is to protect the federal government's right to repayment of loans.  If the state impede on the assets of a water district that is indebted to the federal government, that interferes with the ability of that water district to repay its obligation.

**Conclusion**

Finding that whether K.S.A. § 12-527 is mandatory or directory is not necessary to the resolution of this case, and that K.S.A. § 82a-619 cannot eliminate the Rural Water's right under 7 U.S.C. § 1926(b), certification of these proposed questions to the Kansas Supreme Court is not warranted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Certify Questions to the Kansas Supreme Court (Doc. 140) is denied.

**IT IS SO ORDERED.**

Dated this 14th day of November 2008.

                           S/ Julie A. Robinson
                          JULIE A. ROBINSON
                          UNITED STATES DISTRICT JUDGE