kaw

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RURAL WATER DISTRICT NO. 4,<br>DOUGLAS COUNTY, KANSAS<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF EUDORA, KANSAS,<br><br>Defendant. | Case No. 07-2463-JAR |

## MEMORANDUM AND ORDER

Before the Court is City of Eudora's ("City") Motion to Compel (Doc. 228) and plaintiff Rural Water District No. 4's ("Rural") Motion to Reconsider (Doc. 265). The Court has reviewed the parties' briefs and is ready to rule. For the reasons stated in detail below, the City's motion to compel is denied in part and granted in part, and Rural's motion to reconsider is granted in part.

**Motion to Compel (Doc. 228)—In Camera Review**

On March 9, 2009, the Court ordered Rural to submit certain documents for an in camera review. After review, the Court finds the majority of the material protected by the attorney-client privilege.

The attorney-client privilege is "'the oldest of the privileges for confidential communications known to the common law.'"[1] The purpose is to encourage frank and candid communications between lawyer and client to maximize the effect of legal advise, and consequently promoting a broader public interest in the observance of law and administration of

---

[1]*In re Qwest Comm. Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

justice.[2]  For the privilege to attach, the communications between the lawyer and client must have been in confidence and under circumstances reasonably certain that the information would remain confidential; any revelation of the material to others outside the attorney-client relationship eliminates the privilege.[3]

The City first argues that Rural has waived its privilege as to any administrator reports because Rural attached the reports to minutes of public meetings.  Rural argues that the information in the administrator reports was not disclosed at the public meetings, nor disseminated to the public; rather, the administrator reports were stored with minutes in which information discussed at public meetings and administrator board meetings overlap.  Moreover, just as Rural points out, the City has not shown the Court any public meeting minutes indicating privileged information was discussed.  Accordingly, the Court cannot find that Rural lost its privilege by simply filing for its own convenience the administrator reports with the minutes from the public meetings.

The City argues that the information on page six of the July 15, 2003, administrator's report should not be redacted because Scott Shultz disclosed John Nitcher's thoughts to another party.  Rural contends that merely relaying "thoughts," without specifying the nature or contents of the information is not evidence that the information was disclosed.  After reviewing the redacted information in camera, the Court finds that the information conveyed to Scott Shultz was effectively relayed to Delbert Sheldon.  The sentence after the redacted information states just that: "I relayed John's thoughts to Delbert . . . ."  It is axiomatic that "the privilege will only

---

[2]*Id.*

[3]*Id.*

be recognized when 'the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'"[4] Here, the Court can reasonably assume that in order to satisfy Delbert "that it was up to him to pursue this with the phone company," Scott Shultz revealed the content of the communications with John Nitcher, Rural's attorney. Accordingly, that redacted information is no longer protected by the attorney-client privilege.

The City next contends that information redacted on page thirty-five of the March 11, 2003, administrator report is not privileged. After an in camera review of the statements, the Court finds the information is subject to the attorney-client privilege. The redacted information states the reason for which Nitcher intends to talk with the City attorney. Those reasons were never conveyed to the anyone other than the client. It is therefore a privileged communication.

Next, the City argues that redacted information on page three of the July 9, 2002, administrator report is not privileged. The Court agrees. On page three, the report states that Rural invited a county deputy to speak with Gene Mitchell. Mitchell allegedly threatened to uproot and damage Rural's water lines on his property. A county deputy was called, who, it appears from the report, told Mitchell that it was either a misdemeanor or felony to destroy Rural's water lines. Rural alleges that the information is privileged because John Nitcher told Shultz about the event. But that information was already revealed to the deputy, who would undoubtedly know that destroying someone else's property is either a felony or misdemeanor, and to Mitchell, who of course knew, because the deputy told him.

---

[4] *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (quoting *In re Qwest Comm. Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

The City's final argument is that the information on page forty-six of the December 12, 2006, administrator report is not privileged because the detailed text is not the rendering of legal advice. After an in camera review, however, the Court agrees that the information is covered by the attorney-client privilege. The City has also moved for an in camera review of dozens of administrator reports. After a review, the Court finds a majority of the information is subject to the attorney-client privilege.

The following communications, however, are not subject to the attorney-client privilege. The June 12, 2007, administrator's report, page three, the paragraph starting with "Eudora . . . ." The redacted information is not a communication between attorney and client. Rather, it appears that Shultz is merely reporting on a trip he and Nitcher made. In the following paragraph, beginning with "The 1926b cases . . . ," another statement is made, which simply elaborates on Mr. Harris's experiences. There appears to be no communication with Nitcher or any confidential communication regarding legal advice. Accordingly, that information is not protected by the attorney-client privilege.

Again on page three of the April 10, 2007, administrator report, there is no attorney-client privilege. In the first full indented paragraph on page three, beginning with "John believes . . . ," Rural has redacted two portions. The second redacted portion appears to be merely an impression of another water district. It seems to the Court that the impression of another water district is not communication between attorney and client for purposes of legal advice. That redacted portion is not protected by the attorney-client privilege. Rural has also redacted four words on the first page of the March 13, 2007, administrator report. The sentence as a whole reads: "The City Administrator has not contacted us, so John Nitcher is following up with him."

The Court has a difficult time finding anything privileged about that sentence. Rural, however, believes that "following up with him" is privileged information. It is not. Again on page two of the January 11, 2005, administrator report, Rural has redacted information that is not a communication between attorney and client and does not appear to be given for any legal advice. The whole statement is: "Both John Nitcher and I understand that some might accuse us of being involved in the political process." Rural has redacted "that some might accuse us of being involved in the political process." That information is not a communication between client and attorney for purposes of legal advice.

Accordingly, after an in camera review, the Court finds that some of the information is not subject to the attorney client privilege. The remaining material challenged is covered by the attorney-client privilege.

**<u>Motion to Reconsider</u>**

Motions for reconsideration of dispositive orders are reviewed under Fed. R. Civ. P. 59(e) or 60.[5] Where the moving party has filed the motion within ten days, the Court construes it as a motion for reconsideration under R. 59(e).[6] Under R. 59(e), the Court may alter or amend its judgment based on an intervening change in the law, the availability of new evidence that could not be obtained previously through the exercise of due diligence, or the need to correct clear error or to prevent manifest injustice. A motion to reconsider is not a time for the party to rehash old arguments or present legal issues and facts that could have been presented earlier.

On summary judgment, this Court ruled that a Kansas water district cannot enter into or

---

[5] D. Kan. R. 7.3(a).

[6] Fed. R. Civ. P. 59(e); *see also Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006).

The Court has a difficult time finding anything privileged about that sentence. Rural, however, believes that "following up with him" is privileged information. It is not. Again on page two of the January 11, 2005, administrator report, Rural has redacted information that is not a communication between attorney and client and does not appear to be given for any legal advice. The whole statement is: "Both John Nitcher and I understand that some might accuse us of being involved in the political process." Rural has redacted "that some might accuse us of being involved in the political process." That information is not a communication between client and attorney for purposes of legal advice.

Accordingly, after an in camera review, the Court finds that some of the information is not subject to the attorney client privilege. The remaining material challenged is covered by the attorney-client privilege.

**<u>Motion to Reconsider</u>**

Motions for reconsideration of dispositive orders are reviewed under Fed. R. Civ. P. 59(e) or 60.[5] Where the moving party has filed the motion within ten days, the Court construes it as a motion for reconsideration under R. 59(e).[6] Under R. 59(e), the Court may alter or amend its judgment based on an intervening change in the law, the availability of new evidence that could not be obtained previously through the exercise of due diligence, or the need to correct clear error or to prevent manifest injustice. A motion to reconsider is not a time for the party to rehash old arguments or present legal issues and facts that could have been presented earlier.

On summary judgment, this Court ruled that a Kansas water district cannot enter into or

---

[5] D. Kan. R. 7.3(a).

[6] Fed. R. Civ. P. 59(e); *see also Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006).

cooperate with an agreement with the federal government solely for protection under 7 U.S.C. § 1926(b) because that alone was not necessary for its purposes. Under K.S.A. § 82a-619(g), a rural water district is empowered to enter into agreements and contracts that are "necessary for its purposes." That section states that a water district has the power to "cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative necessary to carry out the purposes of its organization; and to accept financial or other aid which the secretary of the United States department of agriculture is empowered to give . . . ."[7]

Rural moves the Court to reconsider this ruling. Rural first argues that it did not enter into an agreement with the federal government; rather it entered into an agreement with the bank that subsequently entered into a guaranty agreement with the federal government. Because it was not a party to the guaranty agreement between the bank and the federal government, Rural maintains that there is no requirement under K.S.A. § 82a-619(g), that the loan be necessary to its purposes. The Court considers Rural's argument, one that was not raised on summary judgment, but nonetheless concludes that § 82a-619(g) covers the situation at hand.[8]

Rural next argues that the Court erred in concluding that an agreement is not necessary within the meaning of § 82a-619(g) if the sole purpose of the agreement is to obtain monopoly protection under 7 U.S.C. § 1926(b). The Court now reconsiders its ruling to clarify that although a water district cannot show that a loan is necessary if the sole purpose of the loan was to obtain monopoly protection under 7 U.S.C. § 1926(b), a loan obtained to fulfill the business

---

[7]K.S.A. § 82a-619(g).

[8]*See* § 82a-619(g) (noting that a water district has the power to *"cooperate with and enter into agreements* with the secretary of the United States department of agriculture . . . .").

and/or operational purposes of a water district is a loan that is necessary for its purposes within the meaning of K.S.A. § 82a-619(g). The statutory purposes of a water district are to promote the public health, convenience, and welfare. And, Rural's operational and business purposes, as stated in its bylaws, include acquiring water and water rights, building and acquiring pipelines and other facilities, and operating the same "for the purpose of furnishing water for domestic, garden, livestock and other purposes to owners and occupants of land located within the District, and others as authorized by these bylaws." Thus, a loan obtained in order to acquire water or water rights, or to build, acquire and operate pipelines and other facilities, is a loan that is necessary for Rural's operational purposes, and thus clearly a loan authorized by § 82a-619(g).

In this Court's summary judgment order, the Court found that there was a material issue of fact on the issue of whether the loan was necessary, referencing two statements of Rural's Administrator, Scott Shultz. On the one hand Shultz stated that Rural was able to secure complete financing for the Johnson County Project from the Kansas Department of Health and Environment ("KDHE"), a non federal lender,[9] but opted to seek a loan rendered under the provisions of § 1926(b), which would provide Rural with the benefit of protection from curtailment or limitation of its services from any encroaching municipality. However, Shultz also stated that this loan, rendered pursuant to § 1926(b), and its attendant protection from annexation of lands within Rural's service area would protect Rural's ability to maintain its facilities and water system. Maintenance of the water district's facilities and water system is within the scope of its operations and business purposes, and thus a loan obtained for those purposes would be necessary within the meaning of § 82a-619(g).

---

[9] And KDHE was presumably a lender that would not get a federal guaranty under § 1926(b).

The fact that the federally guaranteed loan provided protection from annexation does not render a loan unnecessary, if the loan was otherwise necessary for operational or business purposes. And, the mere fact that there were other non federal lending sources available does not mean that a loan to be used for operational or business purposes is not necessary. Indeed, a water district has discretion to obtain a loan that provides the greatest benefit to its mission and purpose. Kansas law grants utilities wide discretion in determining necessity. Citing to *General Communications System v. State Corporation Commission*,[10] Rural notes that "necessity does not necessarily mean there must be a showing of absolute need."[11] That sentiment has been repeated in Kansas utility cases. For instance, in *Schuck v. Rural Telephone Service Co.*,[12] the Kansas Supreme Court, in discussing a utility's discretion in condemnation proceedings stated that a utility is vested with reasonable discretion to determine the necessity for taking of land for its lawful purposes.[13] The court further stated that a utility's discretion should not be disturbed on judicial review unless there is fraud, bad faith, or abuse.[14]

Eudora contends that Rural's argument that it needed a loan that offered § 1926(b) monopoly protection to secure its financial integrity is a euphemism; that is, obtaining a loan for reasons of financial integrity is the same as thing as obtaining a loan to retain monopoly status. The Court disagrees. Contrary to Eudora's argument, there is a distinction between a water district obtaining a loan that it does not need for operational purposes, simply to protect itself

---

[10] 532 P.2d 1341, 1348 (Kan. 1975).

[11] *Id.*

[12] 180 P.3d 571 (Kan. 2008).

[13] *Id.* at 576.

[14] *Id.* at 577.

from annexation, and a water district that obtains a loan for operational purposes that provides the added benefit of protection from annexation.

Moreover, there are times that a loan obtained expressly to protect the water district's financial integrity may be a loan that is necessary within the meaning of § 82a-619(g). For example, a water district may seek the protection of a loan made under § 1926(b) because condemnation and the incumbent loss of the right to provide water service to the condemned lands may impair the water district's income stream to the detriment of its remaining customers. Indeed, there are cases that recognize that a rural water district's mission can be seriously impaired from an annexation that "cherry picks" or "skims the cream" of the lands that provide a substantial income stream to the water district. [15] Such a scenario might impair the financial integrity of a water district, and thus impair its ability to provide quality water service at reasonable costs *to its remaining customers*. In that situation, a loan under § 1926(b) would clearly be necessary to the water district's purposes.

For these reasons, the Court grants the motion to reconsider to clarify its prior ruling in the order on summary judgment. In short, a loan or agreement is "necessary" within the meaning of § 82a-619(g) if it is for: (1) an operational purpose within the statute and bylaws governing the water district; (2) a business purpose within the statute and bylaws governing the water district; or (3) purposes of protecting itself from impairment of its ability to fulfill its operational and business purposes to its remaining customers, that would result from a partial annexation and condemnation of its service area.

---

[15]*See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057, 1060 (5th Cir. 1987).

IT IS THEREFORE ORDERED THAT Eudora's Motion to Compel (Doc. 228) is granted in part and denied in part, and that Rural's Motion to Reconsider (Doc. 265) is granted in part and denied in part.

IT IS SO ORDERED.

Dated:  May 13, 2009

                                                                              S/ Julie A. Robinson
                                                                              JULIE A. ROBINSON
                                                                              UNITED STATES DISTRICT JUDGE