# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RURAL WATER DISTRICT NO. 4,** | ) | |
| **DOUGLAS COUNTY, KANSAS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-2463-JAR** |
| | ) | |
| **CITY OF EUDORA, KANSAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Rural Water District No. 4, Douglas County, Kansas ("Douglas-4" or "the District") brought this suit against the City of Eudora, Kansas ("the City" or "Eudora"), under 42 U.S.C. § 1983, alleging the City violated Douglas-4's exclusive right to provide water service to current and prospective customers in violation of 7 U.S.C. § 1926(b). By order of the Tenth Circuit filed September 26, 2011, this case was remanded for further proceedings solely on the issue of whether Douglas-4's cooperation to secure a federal guarantee was necessary to carry out the purposes of the organization. This matter is before the Court on the parties' cross-motions for summary judgment (Docs. 461, 468).[1] The Court heard oral argument on February 16, 2012, at which time it took the matter under advisement. Douglas-4 supplemented its submissions (Doc. 482), citing a recent amendment to the controlling statute, K.S.A. § 82a-619(g), and Eudora responded. After reviewing the parties' arguments and submissions, the Court is prepared to rule. For the reasons explained in detail below, the Court denies both parties' motions, and

---

[1]Eudora also moves to strike Douglas-4's Reply Memorandum (Doc. 476) on the grounds that it improperly seeks to introduce new arguments and material for the first time on reply; Douglas-4 responds that its arguments were properly raised on reply (Doc. 479). Given the broad leeway given counsel at oral argument, coupled with the new issues raised in supplemental briefing, the Court denies Eudora's motion.

certifies for interlocutory appeal under 28 U.S.C. § 1292(b) the question of whether the recent amendment to § 82-619(g) is retroactive and thus effectively eliminates the "necessity" issue from the case.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

---

[2]Fed. R. Civ. P. 56(a).

[3]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14] "  "Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to

---

[8]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

material facts."[15]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."

## II.    Uncontroverted Facts and Procedural History

Douglas-4 is a quasi-municipal corporation organized pursuant to K.S.A. § 82a-616(a), for the primary purpose of providing water service to the residents within its geographical boundaries ("Douglas-4's Territory").  Its purpose under Kansas law is to provide water to "promote the public health, convenience and welfare" of the community.[17]  Eudora owns and operates water treatment and distribution facilities located in Douglas County, Kansas.

Douglas-4 needed to borrow funds for the construction of water facilities to enable it to purchase water from Johnson County Consolidated Rural Water District No. 6 (the "Johnson-6 Project").  The Johnson-6 Project was projected to cost $1.25 million, most of which Douglas-4 was required to borrow because it lacked sufficient cash reserves.

In May 2003, Scott Schultz, District Administrator for Douglas-4, prepared a Memorandum for Douglas-4's Board of Directors discussing financing options for the Johnson-6

---

[15]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[16]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[17]K.S.A. § 82a-614.

Project.[18]  By way of background, Schultz stated that the Board had previously approved the

Johnson-6 Project, "with financing of $1.25 million from the KDHE [Kansas Department of

Health and Environment] revolving loan fund at a fixed interest rate of 4.08% over 20 years."

Because KDHE loans do not provide water districts with any protection against annexation by

cities, however, Schultz proposed that Douglas-4 obtain part of the $1.25 loan from a private

bank guaranteed by Rural Development.  Schultz recommended the Board "carve off the pump

station part of our project" that could be financed with a $250,000 private loan and the remaining

$1 million loan from KDHE as planned.  Schultz explained that "[t]he point of this loan would

be to gain negotiating leverage," and "[t]he only reason I can think of that anyone would do a

guaranteed loan from Rural Development is for annexation protection."  Although the cost of

splitting the financing this way would exceed the amount needed for the KDHE loan by $5000 to

$10,000, Schultz stated that the total would be less since the term of the private loan would be

ten years rather than twenty.  Schultz concluded by explaining that "I want you to know that we

are going to proceed with the project regardless of the financing issues—if an obstacle surfaces

on getting the Rural Development guaranteed loan, we will simply take the entire loan from

KDHE as originally planned."  Finally, Schultz stated, "[i]f it costs you a little more in fees and

interest rates, but saves hundreds of thousands of dollars down the road by allowing us to

negotiate on an even par with the cities, it will pay off handsomely."

Douglas-4 borrowed the $250,000 necessary for the Johnson-6 Project from a private

lender, First State Bank & Trust located in Tonganoxie, Kansas ("the Bank").  In order to obtain

the $250,000 loan from the Bank ("the Bank Loan"), Douglas-4 cooperated with the Bank and

[18]Doc. 462, Ex. E.

5

the United States Department of Agriculture ("USDA") to obtain a USDA guarantee for the benefit of the Bank.  The USDA provided the Bank a Conditional Commitment for Guarantee on September 17, 2003, in advance of the disbursement of any loan proceeds.[19]  The Conditional Commitment required the Bank, among other things, to close on the Bank Loan, disburse funds and for the Johnson-6 Project to be substantially completed before the Loan Guarantee was executed.[20]

A six-month promissory loan was executed by Douglas-4 in favor of the Bank on September 11, 2003, for the actual construction of the pump station.  The note was extended by agreement to June 15, 2004, and thereafter, the twenty-year Bank Loan was made on that date, and the Loan Note Guarantee was provided on August 26, 2004.[21]   On July 23, 2003, Ken Pierce, Senior Vice President of the Bank, signed a Lender's Credit Evaluation that stated

> The lender has review [sic] the audited financial statements of the District and the financial feasibility analysis.  The lender is comfortable in making the loan with a Rural Development Guarantee.  Without this guarantee the lender would not be able to make a loan to the District. The lender has prepared their own internal review and would not make a loan without the guarantee.[22]

Pierce also executed a Lender's Certification that states, "Lender would not make the loan without an Agency Guarantee."[23]  Pierce avers that

---

[19]Doc. 469, Exs. 9, 10.

[20]*Id.*

[21]Doc. 469, Ex. 12.

[22]Doc. 469, Ex. 24 at 2.

[23]*Id.* Ex. 8 at 3.

> An essential and necessary requirement of [the Bank Loan]. . . was that [the Bank Loan] be guaranteed by the United States Department of Agriculture—Rural Development. Without such a guarantee, [the Bank Loan] would not have been made. . . . As a necessary part of securing the said Loan Note Guarantee, [the Bank] was required to certify to [the USDA] that [the Bank] would not make the loan to Douglas-4 without the above described Loan Note Guarantee. . . .  In point of fact, [the Bank] would not make the loan to Douglas-4 without the above-described Loan Note Guarantee.[24]

Douglas-4 utilized the proceeds from the Bank Loan to construct a pump station and a related portion of the soft costs that was an integral part of the Johnson-6 Project.

In his declaration submitted in support of Douglas-4's Motion for Summary Judgment, Pierce further avers that the Bank Loan carried a fixed interest rate of 6.020% per annum for the first ten years and 7.520% per annum for the second ten years.  He avers that the USDA guarantee allowed the Bank to provide interest rates and a term of loan more favorable to Douglas-4 than typical commercial loan rates and terms.  Specifically, the interest rate was lower, the rate was fixed over two ten-year periods, and the term was longer than the Bank's typical commercial loan terms at the time, than if the Bank Loan were not supported by such a guarantee.

### Underlying Litigation

Eudora annexed four areas or tracts of land within the Douglas-4 Territory (the "Annexed Land").  At the time Douglas-4 was originally created in 1973, the Annexed Land was included within Douglas-4's geographical boundaries as established by Kansas state law.  At the time Douglas-4 obtained its Bank Loan and the Guarantee from the USDA, Douglas-4 pledged as

---

[24]*Id*. Ex. 11.

collateral various assets, including, but not limited to, all its general intangibles and net revenues.  The Annexed Land has never been removed or de-annexed from the geographical boundaries of Douglas-4.

Douglas-4 filed its first amended complaint on April 24, 2008, alleging three causes of action: a violation of 42 U.S.C. § 1983, declaratory judgment regarding Douglas-4's rights under 7 U.S.C. § 1926(b), and injunctive relief barring the City from selling water in the affected area. Specifically, Douglas-4 asserted that due to the federally guaranteed Bank Loan, it was entitled to § 1926(b) protection precluding Eudora from providing water service to the Annexed Land. Eudora filed counterclaims for tortious interference with business advantage,  fraud, abuse of process and declaratory relief.

After granting in part and denying in part the parties' cross-motions for summary judgment, and granting in part Douglas-4's motion to reconsider, the case proceeded to jury trial. At the conclusion of a ten-day trial, the case was submitted to the jury by way of special interrogatories.  The jury found that Douglas-4 had obtained § 1926(b) protection and Eudora had violated § 1926(b) in each of the disputed areas.  According to the verdict form, the jury first answered "yes" to the general question of whether Douglas-4 had the power under Kansas law to cooperate with and enter into agreements with the federal government.  The jury then determined for each affected property that Douglas-4 made water service available and that Eudora had limited or curtailed Douglas-4's water service.  The jury  also entered for each property the amount of damages, determining that $23,500.00 in damages arose from the Garber property and $1.00 in nominal damages arose from each of the three other properties.  This Court then enjoined Eudora from serving or limiting Douglas-4's service to these areas.  Eudora's appeal

and Douglas-4's cross-appeal followed.

### Tenth Circuit Decision/Scope of Remand

Eudora appealed the jury verdict and the injunction and, in pertinent part, challenged Instruction No. 17, the "Necessary Instruction," on the basis that the instruction limited the "necessary" element to the Bank Loan and did not instruct the jury that the USDA Guarantee itself was also required to be necessary.  The Tenth Circuit reversed the jury verdict because the jury instructions incorrectly framed the necessity issue and remanded the case for a new trial "for the limited purpose of determining whether Douglas-4's cooperation to secure the federal guarantee was necessary for the purposes of its organization."[25]

The court began its analysis with a review of the history and purpose of 7 U.S.C. § 1926(b), noting that for a water district indebted by a qualifying loan to the federal government,

> [t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation by other public body, or by the granting of any private franchise for similar service within such area during the term of the loan.[26]

"To receive this protection, a water district must have both a continuing indebtedness to the USDA and have provided or made available service to the disputed area."[27]

Turning to the first element of § 1926(b), Douglas-4's qualifying indebtedness, the court determined that the federal guarantee of Douglas-4's private loan may be considered an

---

[25]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 980 (10th Cir. 2011).

[26]*Id.* at 975 (quoting 7 U.S.C. § 1926(b).

[27]*Id.* at 976 (citing *Pittsburgh Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 713 (10th Cir. 2004)).

9

indebtedness for purposes of meeting the requirements of § 1926(b).[28]  In addition, "a water

district's qualifying action (i.e. assumption of the qualifying loan or guarantee) must also fall

within its enumerated powers under state law."[29]  The court held that K.S.A. § 82a-619, the

statute that enumerates a water district's powers, is the only statute under which Douglas-4 may

claim authority to accept a federal loan guarantee,[30] and "[t]hus, Douglas-4 must have either

cooperated or entered into an agreement with the USDA, and this cooperation or agreement must

be necessary to carry out the purposes of its organization."[31]  The court then held that although

the Guarantee was between the USDA and the Bank, Douglas-4's interaction with the USDA in

seeking the Guarantee and its benefits "may qualify as 'cooperation' under K.S.A. § 82a-619(g),

---

[28]*Id.*

[29]*Id.*

[30]*Id.* at 977.  Specifically, a water district may "cooperate with and enter into agreements with the United States department of agriculture or the secretary's duly authorized representative necessary to carry out the purposes of its organization." K.S.A. § 82a-619(g).

[31]*Id.*  Douglas-4's Enumerated Purposes as set forth in its charter and bylaws include:

> a) To acquire water and water rights and to build and acquire pipelines and other facilities, and to operate the same for the purpose of furnishing water for domestic, garden, livestock and other purposes to owners and occupants of land located within the District, and others as authorized by these Bylaws.
> b) To borrow money from any Federal or State agency, or from any other source, and to secure said loan by mortgaging or pledging all of the physical assets and revenue and income of the District, including easements and rights-of-way.
> c) To hold such real and personal property as may come into its possession . . . as may be necessary and convenient for the proper conduct and operation of the business of the District.
> d) To establish rates and impose charges for water furnished to participating members and others.
> e) To enter into contracts for the purpose of accomplishing the purposes of the District with any person or governmental agency.
> f) To cooperate with any person or with any governmental agency in any undertaking designed to further the purposes of the District.
> g) To do and perform any and all acts necessary or desirable for the accomplishment of the purposes of the District, which may lawfully be done by such District under the laws of the State of Kansas.

Doc. 469, Ex. 3.

but the cooperation must be necessary to carry out a purpose of Douglas-4's organization.  And in this case, if Douglas-4's cooperation is to be necessary, the guarantee itself must too be necessary."[32]  The court further noted that under Kansas law, "any reasonable doubt as to the existence of a water district's power must be resolved against its existence."[33]

In a footnote, the court rejected Douglas-4's claim that it was also empowered under the second clause of § 82a-619(g)  to "accept financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant to 16 U.S.C.A., secs. 590r, 590s, 590x-1, 590x-a and 590x-3, and amendments thereto," and that this authority does not require that the aid be "necessary" in any form.[34]  The court reasoned,

> However, this clause only applies to financial aid provided under the specific federal statutes listed "and amendments thereto." the enumerated statutes, first enacted in 1937, were repealed by the Consolidated Farmers Home Administration Act of 1961 and are of no use to Douglas-4.  Nor do we consider Congress's repeal of § 590r *et seq.* and replacement with a radically different statutory scheme in § 1926 an amendment to the repealed sections. *Compare* 7 U.S.C. § 1926(b) (providing annexation protection for qualifying loans), *with* 16 U.S.C. § 590x-3 (no protection from annexation).[35]

At the end of the trial, however, this Court concluded that the loan and the guarantee were "one and the same," and directed the jury to determine whether "the loan guaranteed by [the] Federal Government was necessary."[36]  The Tenth Circuit found this instruction to be in

---

[32]*Id.*

[33]*Id.* at 979-80.

[34]*Id.* at 977, n.5.

[35]*Id.*

[36]*Id.*

error, explaining,

> By allowing the jury to consider the loan as a trigger for Douglas-4's indebtedness, the district court shifted the focus of the jury's inquiry away from the actual subject matter of the cooperation, i.e., the guarantee. Yet while the loan and the guarantee are certainly related, they are not one and the same. . . . Although each has its own purpose and must be analyzed independently, without a loan there is nothing to guarantee. Thus, for a guarantee to be necessary the underlying loan must also be necessary. The converse, however, is not always true: not every loan gives rise to a guarantee. Therefore, even if the parties would agree that the loan was necessary to carry out the purposes of Douglas-4's organization, Douglas-4 must still prove that its *cooperation with the USDA*—i.e., the guarantee—was also necessary. The jury was not asked to consider this question. This error alone entitles Eudora to a new trial on this one issue.[37]

The court next turned to the question of what constitutes a "necessary" cooperation or agreement under Kansas law, offering this guidance:

> Douglas-4's decision to seek out a federal guarantee must therefore be justified by more than the incidental monopoly protections afforded by § 1926(b); the guarantee must further at least one of the District's purposes as a rural water service provider as provided in its charter, bylaws, or enacting statutes. Protection from competition does not suffice. Nor can Douglas-4 justify its cooperation by appealing to the abstract goals of maintaining its corporate existence, profits, or integrity without some direct association to an enumerated purpose under its charter, bylaws, or relevant statutes. . . . This does not mean that Douglas-4's cooperation with the USDA must be "absolutely necessary," i.e., that it could not receive *financing* without the guarantee. Nor must Douglas-4 prove that a guarantee was the only or even the cheapest course of action available. Additionally, nothing within § 82a-619, or any other section governing water districts, prohibits a water district from benefitting from the protections of § 1926(b) so long as its triggering cooperation or acceptance of aid furthered a purpose of the organization.[38]

---

[37] *Id.* 977-78 (emphasis in original).

[38] *Id.* at 980 (emphasis added).

The court then concluded, "because the jury instructions incorrectly framed the necessity issue, we must reverse, vacate the judgment, and remand for a new trial for the limited purpose of determining whether Douglas-4's cooperation to secure the federal guarantee was necessary for the purposes of its organization."[39]

## III.   Discussion

### A.   Amendment to K.S.A. § 82-619(g)

Douglas-4 asserts that the Kansas Legislature recently amended § 82a-619(g) by deleting the language relating to the old repealed federal financial aid statutes and replaced it with a specific reference to 7 U.S.C. § 1921 *et seq.*  Specifically, the amended § 82a-619(g) states that every water district incorporated under the act shall have the power to:

> cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative necessary to carry out the purposes of its organization; and to accept financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant to 7 U.S.C. § 1921, *et seq.*, as in effect on the effective day of this act . . .[40]

Douglas-4 argues that § 82a-619(g) contains two separate and distinct provisions: the first requiring non-financial cooperation and agreements to be necessary for purposes of a rural water district's organization, and the second to empower a district to obtain federal financial aid, without the need of necessity.  Douglas-4 contends that the change to the second clause is remedial because it was meant to clarify the error pointed out by the Tenth Circuit in footnote 5, and should be given retroactive effect; because it was empowered "to accept financial or other

---

[39]*Id.* The court noted that because this Court utilized a special verdict, it is appropriate for this Court to limit retrial only to the issue of necessity.  *Id.* at n.7 (citations omitted).

[40]2012 Kan. Laws Ch. 29 (H.B. No. 2588) (effective July 1, 2012).

aid" from the USDA in the form of the guarantee, the "necessary" issue has effectively been eliminated from this case.

In resolving this issue, it is well settled that this Court must attempt to ascertain and apply state law, which in this case is the law of Kansas.[41]  The Court must look to the rulings of the state's highest court and, where no controlling state decision exists, the Court must endeavor to predict how the state's highest court would rule.[42]  The Court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority.[43]  Ultimately, the Court's task is to predict what decision the Kansas Supreme Court would make if faced with the same facts and issue.[44]  In this case, while the law in Kansas is clear on the determination of whether a statute is retroactive, Kansas courts have not yet determined whether the amendment at issue has such application.

The Court finds that the Kansas Supreme Court would find Douglas-4's arguments are without merit.  First, it is not clear that the 2012 amendment to § 82a-619(g)  applies retroactively.  "In determining whether a statute applies retroactively or prospectively, the general rule is that a statute operates only prospectively unless its language clearly indicates that the legislature intended it to operate retroactively."[45]  "However, notwithstanding such clear

---

[41]*Wade v. Emasco Ins. Co.*, 483 F.3d 67, 665 (10th Cir. 2007).

[42]*Id.*

[43]*MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 463 F.3d 1257, 1262 (10th Cir. 2006).

[44]*Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

[45]*State of Kansas/State of Iowa ex rel. Sec'y of Soc.and Rehab. Servs. v. Bohrer*, 189 P.3d 1157, 1162 (Kan. 2008) (citing *Owen Lumber Co. v. Chartrand,* 73 P.3d 753, 755 (Kan. 2003)).

language, when an amendment to an existing statute or a new statute is enacted which prejudices a party's substantive rights, it will not apply retroactively."[46]   A statute that creates a new right or duty that did not previously exist affects a substantive right.[47]   Procedural laws deal with "'the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights.'"[48]   "Substantive laws establish the 'rights and duties of parties.'"[49]

Douglas-4 aks the Court for retroactive application of House Bill 2588.   The supplemental note on H.B. 2588 indicates that Douglas Mays of Kansas Rural Water Association, spoke in favor of the amendment, noting that the federal code had changed and been put into another statute, that "an alert Attorney General caught the change in the federal law," and the amendment "just puts back into place the authority to issue and refinance the bonds."[50]   Although Douglas-4 argues that this shows the amendment is merely remedial and corrects the error pointed out by the Tenth Circuit, that court noted that the statutory scheme of § 1926(b) is "radically different" than what it had been under the repealed statutes referenced in the second clause, and would not be considered an amendment to the repealed sections.[51]   While the legislative history indicates that the amendment was to correct an oversight, i.e., to replace the repealed statutes with the current statutes, it does not follow that the legislature was clarifying

---

[46]*Id.* (citing *Owen Lumber*, 220 P.3d at 755; *Halley v. Barnabe*, 24 P.3d 140, 144 (Kan. 2001)).

[47]*Bohrer*, 189 P.3d at 1162.

[48]*Denning v. Johnson Cnty., Sheriff's Civil Serv. Bd.*, 266 P.3d 557, 572 (Kan. Ct. App. 2011) (citing *Rios v. Bd. of Public Util. of Kansas City*, 883 P.2d 1177, 1182 (Kan. 1994)).

[49]*Id.*

[50]Supp. Note on H.B. 2588,  http://www.kslegislature.org

[51]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 977, n.5 (10th Cir. 2011).

that it intended for the past 51 years that a rural water district could obtain financial or other aid without the need of demonstrating necessity.  Thus, the retroactive application of the amendment proposed by Douglas-4 would effectively legitimize action it took in 2003 and 2004 without any statutory authority.  Accordingly, the Court finds that the amendment to § 82-619(g) is substantive, as it empowers Douglas-4 to accept financial or other aid that the USDA is empowered to give under § 1921, *et seq.*, a right that it did not have in 2003 and 2004.

Moreover, even if given retroactive effect, the Court disagrees that the issue of necessity of the Guarantee is no longer an issue.  Douglas-4 makes the conclusory statement that federal loan guarantees are "financial or other aid" under the second clause, instead of "cooperation" with the USDA under the first clause, as the Tenth Circuit determined.  Indeed, the Circuit specifically found "there is only one clause under which Douglas-4 was authorized to accept a federal loan guarantee," the first clause, as the interaction between Douglas-4 and the USDA qualified as "cooperation," and accordingly, must be necessary to carry out a purpose of Douglas-4's organization.[52]  For this Court to now determine that the federal Guarantee is transformed into "financial or other aid" that does not require necessity would render the first half of the statute a nullity and ignore the scope of the Tenth Circuit's remand.  Thus, the Court turns to the issue before it on remand: whether Douglas-4's cooperation to secure a Rural Development guarantee was necessary to carry out the purposes of its organization under § 83-619(g).

### B.    Necessity of the Federal Guarantee

Eudora contends that it is entitled to summary judgment on all claims because Douglas-4

---

[52]*Id.* at 977.

lacks any evidence to show that its federal loan guarantee was "necessary to carry out the purposes of its organization. . . ."  According to the Tenth Circuit, to pass the necessary test, Douglas-4 must prove that "the guarantee must further at least one of Douglas-4's purposes as a rural water service provider as provided in its charter, bylaws or enacting statutes.  Protection from competition does not suffice. . . ."[53]  Eudora argues that the uncontroverted statements of Douglas-4's Administrator Scott Schultz prove that it did not obtain the loan guarantee to further one of those purposes.  Instead, as Schultz states in his memo to the Board, "[t]he only reason I can think of that anyone would do a guaranteed loan from Rural Development is for annexation protection."  The Tenth Circuit held, however, that "Douglas-4's decision to seek out a federal guarantee must therefore be justified by more than the incidental monopoly protections afforded by § 1926(b). . . ."[54]  Because the uncontroverted evidence shows that Douglas-4 obtained the guarantee only for monopoly protection, which is not necessary to its purposes under Kansas law, Eudora argues it merits summary judgment.  Moreover, any attempt by Douglas-4 to tie the loan Guarantee to its Enumerated Purposes fails because the abstract benefits from "annexation protection" are the same thing as § 1926(b) monopoly protection, and as such were rejected by the Tenth Circuit.

Douglas-4 counters that because the Bank Loan was necessary to Douglas-4's purposes, and the Guarantee was required to obtain the Bank Loan, it follows that the Guarantee itself is necessary to Douglas-4's purposes.  Douglas-4 further asserts that the language of the conditional guarantee agreement shows that the federal Guarantee was absolutely necessary to

---

[53]*Id.* at 980.

[54]*Id.*

obtain the Loan.  Alternatively, Douglas-4 contends that obtaining the Federal Guarantee was necessary for at least one of its Enumerated Purposes as there was some direct association to the following purposes: to obtain necessary financing for water facilities needed to provide water to residents within the Douglas-4 Territory; to construct and maintain water facilities and to provide water services to all residents within the Territory by a) ensuring that Douglas-4 will have sufficient customers to repay the money borrowed without having to charge customers excessive rates, b) preventing Eudora from cherry picking Douglas-4's customers that would result in higher rates and charges to remaining customers, c) preventing Eudora from taking Douglas-4 facilities needed to serve residents within its Territory, d) protecting Douglas-4's power of eminent domain necessary to provide water service, e) preventing the situation where Eudora annexes an area leaving single or multiple residents stranded, with no ability to obtain water, f) preventing Eudora from annexing areas causing Douglas-4 to have one or more dead-end lines serving customers, requiring more flushing and more wasted water, g) enabling Douglas-4 to maintain a looped system in order to provide sufficient and continued service to the residents within the Territory, and h) provide economy of scale to Douglas-4 allowing it to serve isolated residents at reasonable costs.

The Court views both parties' arguments as extremes on the spectrum outlined in the Tenth Circuit's opinion: according to Douglas-4, all USDA guarantees are inherently absolutely necessary; and according to Eudora, all of Douglas-4's Enumerated Purposes are abstract goals that stem from § 1926(b) protection.  Either interpretation, however, would render the necessity requirement under § 82a-619(g) a nullity.  The Tenth Circuit defines "absolutely necessary" as

18

rendering Douglas-4 unable to "receive financing without the guarantee."[55]  In other words, Douglas-4 could not obtain *any* loan without the Guarantee, instead of this specific loan. Further,  by giving water districts the opportunity to offer evidence of  a direct association to an enumerated purpose beyond "the abstract goals of maintaining its corporate existence, profits or integrity," the Tenth Circuit did not foreclose the possibility that such justification for the federal guarantee existed.  However, the Tenth Circuit did not elaborate on what a water district could show to demonstrate that a guarantee specifically was necessary beyond monopoly protection.

Moreover, the Court rejects Eudora's argument that Douglas-4 did not need the federal Guarantee to obtain the Bank Loan, as indicated by Schultz's memo to the Board.  In fact, the Tenth Circuit's statement that Douglas-4's cooperation with the USDA does not need to be absolutely necessary, nor even the cheapest course of action available, neutralizes Eudora's evidence that Douglas-4 could have gotten more favorable terms without the Guarantee by taking the entire loan from the KDHE.  And, although the Court does not agree with Douglas-4 that the law of the case dictates a finding that the Bank Loan was necessary, it does find that the Bank Loan was not a sham loan that Douglas-4 did not need for operational purposes, but rather, was money invested into its operational purposes.

Thus, the Court turns to the issue presented on remand—whether Douglas-4's cooperation to secure the federal Guarantee was necessary for purposes of its organization.  At oral argument, the Court posed this hypothetical to both parties: what would a water district have to show beyond monopoly protection to satisfy the requirement that a guarantee was necessary for the purposes of its organization?  After initially arguing that it could not think of any, counsel

---

[55]659 F. 3d at 980.

for Eudora suggested that one example would be if the guaranteed loan had some benefit that the other existing loan did not, such as a beneficial term or no collateral requirement. Douglas-4 argues that it needed long-term financing and could not have obtained the twenty-year Bank Loan without the federal Guarantee. Although it did obtain a 180-day bridge loan, the Bank agreed to a twenty-year term at a fixed interest rate. As Ken Pierce avers, the federal Guarantee allowed the Bank to provide interest rates and a loan term that were more favorable to Douglas-4 than typical commercial loan rates and terms during 2003-2004.[56] Douglas-4 argues that this is a benefit it would not have received but for the federal Guarantee, and is directly tied to its Enumerated Purposes of borrowing money and spending it on infrastructure to provide services. While the favorable term differences are between loans offered by the Bank, not between the KDHE loan and the Bank Loan, the Tenth Circuit noted that Douglas-4 need not prove the guarantee was the cheapest course of action available. Thus, it is apparent to the Court that disputes remain as to material facts relative to whether the federal Guarantee was necessary, precluding summary judgment for either party.[57]

### C.   Certification for Interlocutory Appeal

28 U.S.C. § 1292 provides for appeals from interlocutory decisions by a federal district court under limited circumstances. Subsection (b) of § 1292 states:

> When a district judge, in making a civil action an order not
> otherwise appealable under this section, shall be of the opinion that
> such order involves a controlling question of law as to which there
> is substantial ground for difference of opinion and that an
> immediate appeal from the order may materially advance the
> ultimate determination of the litigation, he shall so state in writing

---

[56] Doc. 469, Ex. 11, Declaration of Kenneth Pierce.

[57] The Court defers ruling on the content and substance of the "necessary instruction" until trial.

> in such order.  The Court of Appeals which would have
> jurisdiction of an appeal of such action may thereupon, in its
> discretion, permit an appeal to be taken from such order, if the
> application is made to it within ten days afer the entry of the order:
> Provided, however, That application for an appeal hereunder shall
> not stay proceedings in the district court unless the district judge or
> the Court of appeals or a judge thereof shall so order.[58]

There is a strong policy opposing piecemeal litigation and the delay and disruption

associated with it.[59]  Under § 1292(b), that policy may be overcome where an immediate appeal

would materially advance the ultimate termination of the litigation.[60]  In the Court's view, an

appeal at this point on the issue of retroactivity of the amendment to § 82a-619(g) would

accomplish that result.[61]  First, the Court's ruling that the amendment is not retroactive presents a

question of law that would constitute reversible error if found, on appeal, to be erroneous, and

thus meet the requirement that a "controlling issue of law" be involved.  Second, while the Court

is confident that its analysis of the retroactivity issue is correct, it is aware that the parties

submitted extensive briefing in support of their respective submissions.  While the Court denied

Douglas-4's motion for summary judgment on this ground, it presented colorable arguments

based on an alternative construction of the rules regarding retroactivity of statutes and based on

the notion that the amendment was remedial and in response to the Tenth Circuit's opinion in

this case.  Thus, the Court's decision could be deemed erroneous by the Court of Appeals and

---

[58]28 U.S.C. § 1292(b).

[59]*See e.g., Conrad v. Phone Directories Co., Inc.,* 585 F.3d 1376, 1382 (10th Cir. 2009) ("there is a long-established policy preference in the federal courts disfavoring piecemeal appeals.").

[60]*Coffeyville Res. Refining & Mkting. LLC v. Liberty Surplus Ins. Corp.,* 748 F. Supp. 2d 1261, 1268 (D. Kan. 2010).

[61]*See United States v. Stanley,* 483 U.S. 669, 673 (1987) (noting district court has the authority under § 1292(b) to certify its orders sua sponte).

"there is a substantial ground for difference of opinion" withing the meaning of § 1292(b).

Finally, the Court finds that an immediate appeal would "materially advance the ultimate termination of the litigation."  Denial of the parties' cross-motions for summary judgment means this case is headed for trial.  Should the Tenth Circuit reverse this Court's denial of summary judgment on the retroactivity issue, this trial will be unnecessary.

In sum, the Court concludes that an interlocutory appeal is appropriate in this case and satisfies the requirements of 28 U.S.C. § 1292(b).  The Court certifies the following questions: whether the recent amendment to K.S.A. § 82a-619(g) is retroactive and, if so, whether Douglas-4 was empowered to accept financial or other aid from the USDA in the form of a guarantee, without the requirement of necessity.  The Court further orders that these proceedings be stayed until resolution of an interlocutory appeal, should Douglas-4 determine an application is appropriate.  If Douglas-4 opts not to file an application for interlocutory appeal of this issue, the Court will schedule a status conference to determine pretrial issues and to set a date for trial.

**IT IS THEREFORE ORDERED BY THE COURT** that the parties' respective Motions for Summary Judgment (Docs. 461, 468) are DENIED; Eudora's Motion to Strike (Doc. 476) is also DENIED.

**IT IS FURTHER ORDERED** that the following questions are certified for interlocutory appeal: whether the recent amendment to K.S.A. § 82a-619(g) is retroactive and, if so, whether Douglas-4 was empowered to accept financial or other aid from the USDA in the form of a guarantee, without the requirement of necessity.

**IT IS SO ORDERED.**

Dated: June 19, 2012

S/ Julie A. Robinson

22

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE